THOMAS E. MOSS, IDAHO BAR NO. 1058
UNITED STATES ATTORNEY
AMY HOWE, IDAHO BAR NO. 3385
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP, PLAZA IV
800 PARK BLVD., SUITE 600
BOISE, IDAHO  83712
TELEPHONE:  (208) 334-1211
FACSIMILE: (208) 334-1414

Attorney for Plaintiff United States of America

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| ex rel. JENNIFER PUTNAM, | ) | Case No. CV 07-192-E-BLW |
| | ) | |
| Plaintiffs, | ) | **UNITED STATES' SECOND** |
| | ) | **AMENDED COMPLAINT** |
| v. | ) | **AND DEMAND FOR JURY TRIAL** |
| | ) | |
| EASTERN IDAHO REGIONAL MEDICAL | ) | |
| CENTER; EASTERN IDAHO HEALTH | ) | |
| SERVICES, INC.; THE BOARD OF | ) | |
| TRUSTEES OF MADISON MEMORIAL | ) | |
| HOSPITAL; a/k/a, d/b/a MADISON | ) | |
| MEMORIAL HOSPITAL; IDAHO FALLS | ) | |
| RECOVERY CENTER; MATTHEW | ) | |
| STEVENS; MICHELLE DAHLBERG; | ) | |
| SPEECH AND LANGUAGE CLINIC, | ) | |
| INC., PREMIER THERAPY | ) | |
| ASSOCIATES, INC., a/k/a THERAPY | ) | |
| SERVICES, INC., a/k/a TETON SPEECH | ) | |
| LANGUAGE PATHOLOGY, INC., | ) | |
| HCA - THE HEALTHCARE COMPANY, | ) | |
| a/k/a HCA, INC., d/b/a HCA - IT&S FIELD | ) | |
| OPERATIONS, INC., HCA - IT&S | ) | |
| INVENTORY MANAGEMENT, INC., | ) | |
| HCA - MANAGEMENT SERVICES, | ) | |
| L.P., HTI HOSPITAL HOLDINGS, INC., | ) | |

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 1**

HEALTH TRUST, INC. - THE HOSPITAL )
COMPANY and HCA, INC.,            )
                                  )
                Defendants.       )
_____  )

      Plaintiff United States of America, through Assistant United States Attorney Amy

Schipper Howe, on behalf of the United States Department of Health and Human Services,

brings this civil complaint against the above-named Defendants for damages and penalties under

the False Claims Act, as amended, 31 U.S.C. §§ 3729-3733, and under the common law theories

of payment by mistake, disgorgement, unjust enrichment, and recoupment, and alleges as

follows:

**I.      NATURE OF THIS ACTION**

      1.      This is a False Claims Act ("FCA") action alleging that Defendants Eastern Idaho

Regional Medical Center ("Eastern"), Madison Memorial Hospital  ("Madison"), Idaho Falls

Recovery Center (the "Center"), Matthew Stevens ("Stevens"), Premier Therapy Associates, Inc.,

("Premier"), Teton Speech Language Pathology, Inc. ("Teton"), Michelle Dahlberg

("Dahlberg"), and Speech and Language Clinic, Inc. ("Clinic"), knowingly submitted or caused

to be submitted false and fraudulent claims to the United States through the Idaho Medicaid

program for speech language pathology (also called "speech therapy") services.  Due to the

Defendants' fraud and concealment, the United States and/or its agents sustained damages by

paying for medical services which were ineligible for reimbursement because they were

performed by individuals (Speech Language Pathologist Aides - "SLPA") who lacked the

requisite education, training, licenses and/or certification, all in violation of explicit Medicaid

rules and regulations.  These SLPA services billed as speech language pathologists ("SLPs")

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY
TRIAL - 2**

services were provided to, among other patients, children and adults with articulation problems,
autism, brain injuries and other conditions requiring trained and certified SLP.

2.      In addition, Defendants Eastern and Stevens, and Stevens doing business as Teton
and/or Premier, and Dahlberg, as Stevens' subcontractor, submitted, or caused to be submitted,
fraudulent claims for speech therapy which were not allowable services under the Idaho
Medicaid program because the services were rendered at an improper location.

3.      Defendants' knowing submission of false and fraudulent claims for payment
constitutes a violation of the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.* ("FCA").  As a
result of their fraudulent conduct, Defendants have caused the government to sustain a direct loss
of funds and damage.

4.      The FCA prohibits knowingly presenting, or causing to be presented to the
federal government a false or fraudulent claim for payment or approval, and conspiring to
defraud the government by getting a false or fraudulent claim allowed or paid.  31 U.S.C.
§ 3719(a)(1), (a)(3).  Additionally, it prohibits knowingly making or using, or causing to be
made or used, a false or fraudulent record or statement to get a false or fraudulent claim paid or
approved by the federal government.  31 U.S.C. § 3729(a)(2).  Any person who violates the FCA
is liable for a civil penalty of up to $11,000 for each violation, plus three times the loss sustained
by the United States.  31 U.S.C. § 3729(a).

5.      The FCA defines "knowing" as having actual knowledge that the information is
false, or acting with a deliberate ignorance of, or reckless disregard for, the truth or falsity of the
information.  31 U.S.C. § 3729(b).

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY
TRIAL - 3**

6.     The FCA statute allows any person having information about an FCA violation to bring an action on behalf of the United States, and to share in any recovery obtained.  The Act requires that the complaint be filed under seal for a minimum of 60 days (without service on the Defendants during that time) to allow the government time to conduct its own investigation and to determine whether to join the suit.  31 U.S.C. § 3730(b).

## II.     PARTIES

7.     Plaintiff, the United States on behalf of the United States Department of Health and Human Services ("HHS") and its agency, the Centers for Medicare and Medicaid Services ("CMS"), administers the Health Insurance Program for the Aged and Disabled established by Title XVIII of the Social Security Act (Act), 42 U.S.C. §§ 1395 *et seq*. (Medicare), and Grants to States for Medical Assistance Programs pursuant to Title XIX of the Act, 42 U.S.C. §§ 1396 *et seq*. (Medicaid), and provides federal funding for the Medicare and Medicaid Programs.

8.     Relator Jennifer Putnam ("Relator" or "Putnam") is a resident of Pocatello, Idaho. She is currently the manager and supervisor for outpatient speech language pathology services at Oneida County Hospital.  She is a certified Speech Language Pathologist ("SLP"), having received her Master of Science degree, magna cum laude, in Speech Language Pathology from Idaho State University in 2000.  Relator performed externship work in the summer of 2000 at both Defendant Eastern and Defendant Madison.  That fall, Relator began work as a subcontractor for Defendant Stevens, doing business as Teton or Premier, who had received a contract from Eastern for the speech therapy services.  Relator, in performance of her subcontract with Defendant Stevens, performed services at Defendant Eastern.

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 4**

9.     Defendant Eastern Idaho Regional Medical Center, aka Eastern Idaho Health Services, Inc.("Eastern"), is a hospital located at 3100 Channing Way, in Idaho Falls, Idaho. Upon information and belief, Eastern is wholly owned by Eastern Idaho Health Services, Inc., a corporation registered to do business in Idaho.  (Together known as "Eastern").  Upon information and belief,  Eastern Idaho Health Services, Inc. is wholly owned by HTI Hospital Holdings, Inc., ("HTI") which is wholly owned by Health Trust Inc.- the Hospital Company, ("Health Trust"), which is wholly owned by HCA, Inc., or HCA-The Healthcare Company, a/k/a HCA Inc. ("HCA")  Neither HCA, HTI nor Health Trust is registered to do business in Idaho. HCA is liable in this action for the conduct of each subsidiary between it and Eastern Idaho Regional Medical Center and other entities it and its predecessors owned or operated as general or managing partner.  Currently registered HCA companies doing business in Idaho include HCA - IT&S Field Operations, Inc., HCA - IT&S Inventory Management, Inc., and HCA - Management Services, L.P.  HCA is liable for the conduct of these entities or its subsidiaries and Eastern's conduct directly, because it or its predecessors or subsidiaries committed, participated in or caused the acts described herein, or derivatively, because it or its predecessors operated their various subsidiaries and Eastern Idaho Regional Medical Center as an alter ego of the parent corporations.  The knowledge of Eastern is imputed to HCA and its subsidiaries.  The United States alleges, upon information and belief, that HCA and its predecessors:  (a) created separate legal entities through which they owned or operated hospitals and other healthcare providers while dominating and controlling them all, operating them in an integrated manner, and disregarding the subsidiary corporations' basic corporate form; (b) shared common ownership, board membership and management with their various subsidiaries, affiliates and

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 5**

hospitals; (c) shared corporate, group and divisional resources to perform operational, administrative, financial and reimbursement functions for their various subsidiaries, affiliates and hospitals; and (d) precluded the subsidiaries and affiliates from conducting business except that which was directed by and in the interests of the ultimate parent corporation.  The United States alleges, upon information and belief, that HCA and its predecessors historically operated various subsidiaries and affiliates as mere shell corporations through which corporate directives flowed to hospitals, and profits and other revenue flowed from hospitals.

10.     Defendant HCA is one of the largest healthcare companies in the United States. According to its annual report, as of December 31, 2005, HCA operated 182 hospitals and 94 freestanding surgery centers in 22 states, England and Switzerland.

11.     In or about April, 1997, and again in February, 1998, Defendant Eastern, through its Chief Financial Officer Debra Herseldt, signed a Medicaid Provider Agreement.  Under that agreement Eastern agreed to review the contents of the rules governing reimbursement for items and services under Medicaid in Idaho and that claims filed would be accurate for services actually provided as claimed, taking full responsibility for the accuracy of claims submitted. Eastern is a Medicaid "provider" in that it has a provider number.

12.     Defendant "The Board of Trustees of Madison Memorial Hospital," also known as and doing business as "Madison Memorial Hospital" ("Madison"), is a hospital owned by Madison County, Idaho, located at 450 East Main Street, in Rexburg, Idaho.  In or about February, 1997, Madison, through its Chief Executive Officer, Keith Steiner, signed a Medicaid Provider Agreement.  Under that agreement Madison agreed to review the contents of the rules governing reimbursement for items and services under Medicaid in Idaho and that claims filed

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 6**

would be accurate for services actually provided as claimed, taking full responsibility for the accuracy of claims submitted.  Madison is a Medicaid "provider" in that it has a provider number.

13.     Defendant Idaho Falls Recovery Center, Inc. ("The Center") is a short term hospital located at 1957 17th Street, in Idaho Falls, Idaho.  In or about March, 1997, The Center, through its Authorized Administrative Assistant, Trish Johnson, signed a Medicaid Provider Agreement. Under that agreement The Center agreed to review the contents of the rules governing reimbursement for items and services under Medicaid in Idaho and that claims filed would be accurate for services actually provided as claimed, taking full responsibility for the accuracy of claims submitted.  The Center is a Medicaid "provider" in that it has a provider number.

14.     Defendant Matthew Stevens is a certified Speech Language Pathologist whose address is 1831 South Foothill Road in Ammon, Idaho.  He is the owner of Defendant  Premier Therapy Associates Inc, ("Premier") located at 3814 South Washington Parkway, in Idaho Falls, Idaho.  He is also, presently or in the past, the owner of Defendant Teton Speech Language Pathology, Inc., ("Teton")  located at 1831 South Foothill Road in Ammon, Idaho, and the registered agent and sole owner/manager of William & Stoddard Holdings, LLC ("WS"), located at Stevens' addresses.  Upon information and belief, WS is the alter ego of Stevens.  At all times relevant, Stevens controlled Teton and Premier and used these entities to facilitate the illegal activities described herein. Stevens negotiated contracts with the Defendant Providers Eastern, Madison and The Center, under the names of Teton and Premier in order to conduct the activities alleged herein.  Teton and Premier are the alter egos of Stevens.

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 7**

15.     Defendant Michelle Dahlberg is a certified Speech Language Pathologist whose address is 6440 East Sidehill Lane, in Idaho Falls, Idaho.  She was a subcontractor to Defendant Stevens and later contracted directly with The Center to provide speech therapy services.  Both as a subcontractor and contractor, Dahlberg billed Medicaid or caused Medicaid or its fiscal intermediary to be billed for services through both Eastern and Idaho Falls Recovery Center. Dahlberg is the owner of Defendant Speech and Language Clinic, Inc. ("The Clinic") located at 6440 E. Sidehill Lane, Idaho Falls, Idaho.  As a contractor with Stevens and the Defendant providers as described herein, Dahlberg acted under the name of The Clinic.  Dahlberg controlled and used The Clinic to facilitate the illegal activities described herein.  Dahlberg and The Clinic provided or caused to be provided the subject billing information to the Defendant hospitals Eastern and The Center for services provided by or arranged by Dahlberg.  The Clinic is the alter ego of Dahlberg.

## III.     JURISDICTION AND VENUE

16.     This court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1367(a) and 31 U.S.C. §§ 3729, 3730(a) and 3732.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1392(b) and 31 U.S.C. § 3732 because the acts alleged in this complaint occurred in the  District of Idaho.

18.     This Court has personal jurisdiction over the Defendants because, among other things, the Defendants' principal places of business are in this district, and Defendants engaged in wrongdoing in this district.  Defendant HCA is doing business in this district as described in paragraph 9, herein.

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 8**

## IV.     BACKGROUND – MEDICAID PROGRAM REQUIREMENTS

19.     Title XIX of the Social Security Act ("The Act") enacted in 1965, established Medicaid, a joint federal-state program that provides healthcare benefits for certain groups, primarily the poor and disabled.  Within broad Federal rules, each State decides eligible groups, types and range of services, payment levels for services and administrative and operating procedures.  The Federal government provides matching funds and insures that states comply with minimum standards in the administration of the program.  Participants in the program, such as all Defendants, are under a legal duty to familiarize themselves with the requirements for reimbursement and agree to abide by the rules governing reimbursement, and take full responsibility for accuracy of claims submitted.

20.     The Medicaid Program in Idaho is a state-administered health insurance program that is predominantly funded, approximately 70%, by HHS, through its agency CMS.  The Idaho Medicaid Program is a cooperative federal-state program that furnishes medical assistance to the indigent.  This program helps pay for reasonable and necessary medical procedures and services provided to individuals deemed eligible under federal-state low-income programs.  Among the types of reimbursable medical assistance available to covered persons are Speech Therapy.

21.     States are required by federal law to report fraud and abuse in Medicaid programs to HHS, to adopt appropriate control programs to safeguard against inappropriate use of Medicaid services, including excess payments, and to investigate fraud and abuse.  The Medicaid Fraud Unit and the Surveillance Utilization and Review ("SUR") Unit of the State of Idaho Department of Health and Welfare ("IDHW") perform this function.

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 9**

22.     The Idaho Medicaid Program is administered by IDHW, which processes and pays claims submitted by healthcare providers such as Defendants Eastern, Madison and Center. Defendants Stevens and Dahlberg, either individually or through their respective corporations (Premier, Teton, and The Clinic), billed their services for Speech Therapy or caused their services to be billed under the provider numbers of the Defendant hospitals.

23.     To make a claim for reimbursement, a health care provider is required to complete and submit a Health Insurance Claim Form (HCFA 1500 Form) to IDHW.  The HCFA 1500 Form may be submitted by mail or electronically through an electronic claims system.  The HCFA 1500 Form contains a certification stating the services provided were medically indicated and necessary for the health of the patient, and furnished or supervised by appropriately licensed or certified medical professionals.

24.     The Medicaid program in Idaho covers speech therapy services provided to a program beneficiary only if the services, including "diagnostic, screening, preventative, or corrective services,  are "provided by a licensed speech pathologist."  Idaho Department of Health and Welfare, IDAPA § 16.03.09.23 "Medicaid Basic Plan Benefits:  Speech/Language Pathology and Audiology Services."  *See also* Idaho Department of Health and Welfare, Medicaid Basic Plan Benefits, IDAPA § 16.03.09.744.02 "Audiology Services - Provider Qualifications and Duties" ("The following are qualified to provide audiology services as Medicaid providers: Speech-Language Pathologist, Licensed:  A person licensed to conduct speech-language assessment and therapy in accordance with the Speech and Hearing Services Practice Act, Title 54, Chapter 29, Idaho Code, who possesses a certificate of clinical competence in speech language pathology from the American Speech, Language and Hearing

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 10**

Association (ASHA) or who will be eligible for certification within one (1) year of employment.")

25.     At all times and for all services relevant to the complaint herein, none of the Defendants' "aides" ("SLPAs") who provided services to Idaho Medicaid beneficiaries were exempt from licensure requirements under ASHA or otherwise qualified or eligible to provide speech language services to such beneficiaries.  See Title 54, Professions, Vocations, and Businesses, Chapter 29, Speech and Hearing Services Practice Act, § 54-2905(1)(c), (2).

26.     Idaho Medicaid rules further ensure the legitimacy and quality of SLP services by requiring that the services be provided only in appropriate settings.  To be a covered service under Idaho Medicaid rules, SLP services, in addition to being performed by licensed therapists, must be provided either by outpatient hospitals or by school-based services providers.  Idaho Department of Health and Welfare, Medicaid Basic Plan Benefits, IDAPA § 16.03.09.738 ("Speech and Occupational Therapy Services: Speech Therapy services are covered under these rules when provided by outpatient hospitals and school-based services  providers.")

27.     The amount of reimbursement paid to outpatient hospitals for SLP services under Idaho Medicaid rules varies from hospital to hospital.  The reimbursement is based on the covered charges multiplied by an outpatient reimbursement rate and is subject to an upper limit maximum.  Idaho Medicaid Provider Handbook, Hospital Guidelines, § 3.3.2.  SLPs such as Stevens and Dahlberg provide services as independent contractors for hospital providers such as Eastern, Madison, and The Center, who bill Medicaid for their services.

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 11**

28.     Idaho Medicaid rules further require that all hospital "outpatient services are to be provided at a service location over which the hospital exercises financial and administrative control."  Idaho Medicaid Provider Handbook, section 3.3.1.

29.     Defendant Stevens and/or his alter egos Premier and Teton, and Defendant Dahlberg, doing business as The Clinic, as a sub-contractor to Stevens, contracted with Defendants Eastern and The Center, and Stevens, doing business as Premier or Teton, contracted with Madison so that the SLP services could be provided in an outpatient hospital setting.  The respective contracts between Defendants Eastern and Stevens/Premier/Teton, The Center and Stevens/Premier/Teton, Madison and Stevens/Premier/Teton, each provided that in dividing the Medicaid reimbursement payments, the SLP would be paid a set amount for each speech therapy service billed and the hospitals would retain the remainder of the reimbursement.  As such, both the hospitals and Stevens received a benefit from each SLP service billed.

30.     Defendant Dahlberg and/or her alter ego The Clinic contracted with Defendants Eastern and Idaho Falls Recovery Center directly so that SLP services could be provided in an outpatient hospital setting.  The contract between The Center and Dahlberg/The Clinic provided that in dividing the Medicaid reimbursement payments, Dahlberg/The Clinic would be paid a set amount for each service billed and the hospitals would retain the remainder of the reimbursement.  As such, both the hospital and Dahlberg benefitted from each speech therapy service billed.  Dahlberg also benefitted as a subcontractor for Stevens when she was paid from his share of his services.

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 12**

VI.    ALLEGATIONS

31.    The United States incorporates by reference and realleges as though fully set forth herein paragraphs 1 - 30.

A.    **Billing for Services provided by Unlicensed Speech Therapists.**

(i)    **Stevens**

32.    In or around 2000, Defendant Stevens understood that a hospital in Utah successfully received Medicaid reimbursement for speech therapy services provided by aides, rather than by certified therapists. The "aides" (SLPAs) were individuals who did not have the requisite education or training necessary to obtain licensure as speech therapists or who simply were not licensed, certified speech therapists. In the fall of 2000, Relator Putnam was present in the room when Defendant Stevens phoned the Utah hospital and asked how such reimbursement was accomplished. Shortly thereafter, Stevens began using an aide, Cara Butler ("Butler"), to see outpatient pediatric patients. Relator Putnam personally spoke to Stevens and advised that Stevens could not use SLPAs and bill Medicaid for their services.

(ii)    **Stevens and Eastern**

33.    When Butler left Stevens' employ, Stevens hired another aide named Lisa Christensen ("Christensen"), who had previously worked on the Rehabilitation Floor at Eastern. Thereafter, Stevens began to "double-book" outpatient pediatric clients. He would see one child and Christensen would simultaneously see another. On some occasions, Christensen would see all of Stevens' patients when Stevens was on vacation. For the Medicaid patients seen by Christensen, Stevens was not actively involved in providing speech therapy services. The

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 13**

medical entries in the patients' records may have been written by Christensen and the other

SLPAs, who sometimes used the title "SLPA," for "Speech Language Pathology Aide."

34.     After employing Christensen, Stevens authorized Kerry  Kearl ("Kearl")

(formerly Kerry Jones), another speech therapist hired by Stevens as an independent contractor,

to hire four additional aides.  Christensen and other aides would turn in billing information

directly to Eastern per instructions from Stevens.  Aides at all times relevant wore identification

badges identifying their position. The Aides were integrated into the daily routine at Eastern,

participated in work-related social events, and were known by Eastern personnel on a first name

basis.  The administrative assistants reviewing billing information knew who the aides were,

knew that they were speech therapy providing SLP services and billing information, and

contacted them directly for any missing information needed for billing submissions they

completed.  Eastern knew that the SLPAs, not licensed SLPs, were providing the speech therapy

services and completing the billing information.  The SLPAs who worked for Stevens and

Eastern administered diagnostic tests and provided independent therapy to Medicaid patients.

Stevens and Eastern knew that the Medicaid program would not pay for the services if the

program was aware that such services were, in fact, provided by SLPAs only.  Stevens and

Eastern knowingly and falsely billed the Medicaid program for the services provided by

Christensen and the other aides as if those services had been provided by a certified SLP.

35.     Prior to March 29, 2002, G. Thomas "Bud" Cox, Rehabilitation Director at

Eastern, and Derek Lythgoe, Ethics Compliance Officer of Eastern had discussed the use of

aides and assistants for patient treatment in a board meeting and conducted follow-up

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY
TRIAL - 14**

discussions by e-mail.  Lithgoe acknowledged receiving calls from Relator.  Cox considered the matter a "dead" issue.

36.     In the summer of 2002, Relator Putnam spoke to Cox about the illegal billing practices regarding SLPAs.  Putnam also provided Cox the documentation of The American Speech Language Hearing Association's position statement on the use of aides.  She handwrote concerns on the document and underlined specific areas.  She further told Cox about the Idaho Medicaid rule found on the state's website specifying that speech therapy performed by aides was not a covered Medicaid service.  Cox told the Relator that he would follow up on her concerns.  Defendant Stevens later told Putnam that he found out Putnam had given Cox information regarding the use of aides.  Stevens stated that he recognized Putnam's handwriting on the documents and Cox informed Stevens that "someone" had brought him the paperwork.  After learning of Putnam's discussion with Cox, Defendant Stevens threatened Putnam with the loss of her independent contractor position.

37.     Cox's assistant, Cheryl O'Connell ("O'Connell"), subsequently attended a meeting with all of the SLPs working under contract at Eastern.  During this meeting, the Relator reaffirmed that Medicaid should not be asked to pay for "services" performed by SLPAs.  At the meeting, the Relator provided to Stevens and O'Connell the Medicaid website that documented this information.  Another SLP, Amy Jensen ("Jensen"), acknowledged that Medicaid did not pay for services provided by aides.  Jensen and SLP Janet Loomis voiced concerns about the lack of supervision the aides were receiving.  After the meeting, Stevens and Kearl called the Idaho Medicaid office directly and were told that SLPAs could not be billed to Medicaid.

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 15**

Relator Putnam was told by Kearl that both Stevens and Kearl had called independently of each other and both received the same answer: that services of aides could not be billed.

38.     When the use of aides and the billing to Medicaid for speech therapy services continued, Relator Putnam spoke about the problem with Derek Lithgoe.  No action was taken by Lithgoe to report the problem to Medicaid, return any payments wrongfully obtained, or cease the billing practices.  The Relator later found out from O'Connell that the CEO of Eastern, Doug Crabtree, had a meeting with Lithgoe and Stevens, in which the use of aides was discussed.  Also discussed was whether Eastern should return the funds that Medicaid had wrongfully paid based on the fraudulent billings for services provided by SLPAs.  No return of funds was made.

39.     Stevens, operating under the name of Teton, had entered into a Professional Services Agreement with Eastern in January, 2001.  Dahlberg was s subcontractor of Stevens. With the knowledge and participation of Defendants Stevens (Teton) and Dahlberg (The Clinic), Eastern knowingly used its Medicaid provider identification number and knowingly submitted false claims for payment to the Medicaid program based on speech therapy provided by unqualified and unlicensed aides.

### (iii)     Stevens and Madison

40.     Defendant Stevens also used SLPAs in performance of his contract with Madison to perform speech therapy.  As at Eastern, the SLPAs administered diagnostic tests and provided independent therapy to Medicaid patients at Madison without the presence of SLP.  Some of the same SLPAs who worked at Eastern also worked at Madison, and also worked with Kearl. Stevens provided or caused to be provided information for Madison to complete the HCFA 1500 form to submit to Medicaid for the speech therapy services provided by the SLPAs.

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 16**

41.     Upon information and belief, with the knowledge and participation of Defendants Stevens, Madison, using its provider identification number, knowingly submitted false claims for payment to the Medicaid program for speech therapy provided by unqualified and unlicensed aides.

### (iv)     Stevens and Dahlberg and the Center

42.     In January 2004, Defendant Stevens, through the entity Premier, entered into a Professional Services Agreement with the Center to provide Speech Therapy Services.  In or around May 2004, Defendant Stevens, under the name of Premier Therapy Associates, upon information and belief, contracted with Defendant Dahlberg to provide speech therapy at The Center.  There, Defendant Stevens and Dahlberg, with the knowledge of The Center, used unlicensed, unqualified aides to provide services to Medicaid patients, and caused The Center to knowingly and fraudulently bill Medicaid for the work performed by the SLPAs.

43.     In June 2005, Dahlberg, through the Clinic, entered into a direct Professional Services Agreement with The Center to provide speech therapy services.  With the knowledge of The Center, Dahlberg also  used unlicensed, unqualified aides to provide services to Medicaid patients, and knowingly and fraudulently caused The Center to bill Medicaid for the work performed by the SLPAs, using its provider number.

44.     For example, the Relator was contacted by a mother, D.B.,  whose son, J., a Medicaid recipient, was scheduled to be seen by an aide at the Center.  The family was disappointed that a "real" therapist would not provide the service.  J. subsequently received services by an aide at the Center.

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 17**

45.     One of  Dahlberg's aides at the Center was Lorraine Hart.  Ms. Hart spoke to Relator Putnam and told her that she had questioned Dahlberg regarding her practice of billing Medicaid for the work done by her aides.  Ms. Hart said that Dahlberg then fired her.

46.     Upon information and belief, many of the SLPAs were high school graduates or had only Associate Degrees.  None was qualified or certified to provide speech therapy.

47.     Upon information and belief, with the knowledge and participation of Defendants Dahlberg and Stevens,  the Center, using its provider identification number, knowingly submitted false claims for payment to the Medicaid program based on speech therapy provided by unqualified and unlicensed aides.

**B.     Services Provided in Inappropriate Locations**

48.     At numerous times throughout 2002 and 2003, Stevens sent Megan Summers ("Summers"), an SLP with whom he had subcontracted, to Joshua D. Smith & Associates ("Joshua"), an adult day service provider in Idaho Falls.  At Joshua, Summers provided speech therapy services to Medicaid patients.  Those speech therapy services were billed by Eastern. The services were not allowable under Medicaid rules because hospital outpatient services in Idaho are limited to only a "location over which the hospital exercises financial and administrative control."  Idaho Medicaid Provider Handbook, section 3.3.1.  Joshua is under private ownership and is not in Eastern's control.  Both Defendants Eastern and Stevens billed the Medicaid program for these services, despite knowing that the services were not allowable under Medicaid.  Upon information and belief, Stevens and Dahlberg sent other SLPs to Joshua and to other locations at which speech therapy services could not be billed to Medicaid by

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 18**

Eastern, Madison or The Center.  Upon information and belief, the hospital knowingly billed for such services.

<center>**Count I**</center>

<center>**False Claims Act 31 U.S.C. § 3729(a)(1) and (a)(2)**</center>

49.     The United States incorporates and realleges each allegation in ¶¶ 1 through 48, as if fully set forth herein.

50.     This is a claim for treble damages and  penalties under the False Claims Act, 31 U.S.C. §§ 3729, <u>et seq</u>., as amended, for Medicaid fraud.

51.     Through the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims for speech therapy services for Medicaid beneficiaries to officers or employees of the United States Government, within the meaning of 31 U.S.C. § 3729(a)(1).

52.     Through the acts described above, Defendants knowingly made, used, or caused to be made or used, false or fraudulent records and statements to get false or fraudulent claims for speech therapy services for Medicaid beneficiaries paid or approved, within the meaning of 31 U.S.C. § 3729(a)(2).

53.     The United States was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants, and paid and continues to pay claims for Medicaid speech therapy services that would not be paid but for Defendants' unlawful conduct.

54.     As a result of the Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 19**

55.     By virtue of the false or fraudulent claims made by Defendants, the United States suffered damages and therefore is entitled to treble damages and a civil penalty for each violation of the FCA.

### Count II

### False Claims Act 31 U.S.C. § 3729(a)(3)

56.     The United States incorporates and realleges each allegation in ¶¶ 1through 55, as if fully set forth herein.

57.     This is a claim for penalties and treble damages under the FCA, 31 U.S.C. §§ 3729, *et seq.*, as amended, for Medicaid fraud.

58.     Through the acts described above, Defendants Dahlberg and Stevens acting in concert with each other, Defendant Dahlberg acting in concert with Defendant Center, Dahlberg and Stevens together in concert with The Center, and Defendant Stevens, in concert with Defendant Center, with Eastern and with Madison, submitted false claims without disclosing material facts and information of falsity, within the course, scope and authority of such contract, agency, partnership and/or representation for the conduct described herein.  The Defendants conspired, as alleged above, to defraud the United States by getting false or fraudulent claims for speech therapy services for Medicaid beneficiaries allowed or paid by the United States within the meaning of 31 U.S.C. § 3729(a)(3).

59.     As a result, the United States was unaware of the fraudulent conduct of Defendants and paid and continues to pay claims for speech therapy services for Medicaid beneficiaries that would not be paid but for Defendants' unlawful conduct.

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 20**

60. By virtue of the Defendants' conspiracy to defraud the United States, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

61. Additionally, the United States is entitled to treble damages and a civil penalty for each violation of the FCA due to Defendants' scheme to defraud the United States.

## COUNT III

(Payment By Mistake)
(Defendants HCA, Eastern, Madison, and The Center)

62. Plaintiff United States repeats and realleges each allegation in ¶¶ 1 through 61, as if fully set forth herein.

63. This is a claim for the recovery of monies paid by the United States to the Defendants as a result of mistaken understandings of fact.

64. The United States and its agents, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the speech therapy claims submitted by Defendants Eastern (and thus HCA, under theories previously alleged), Madison and The Center, paid Eastern, Madison and The Center certain sums of money to which they were not entitled.  In such circumstances, payment was by mistake and was not authorized.  Defendants HCA (and/or its subsidiaries), Eastern, Madison, and The Center are thus liable to amounts and pay such accounts, which are to determined at trial to the United States.

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 21**

## COUNT IV

(Disgorgement of Illegal Profits)
(All Defendants)

65.     Plaintiff United States repeats and realleges each allegation in ¶¶ 1 through 64, as if fully set forth herein.

66.     This is a claim for disgorgement of profits earned by Defendants because of the false claims for speech therapy services provided by unlicensed SLPAs and speech therapy services performed at ineligible locations that Medicaid paid.

67.     Defendants concealed their illegal activity through false statements, claims and records, and failed to abide by their duty to disclose such information to the United States.

68.     The United States did not detect Defendants' illegal conduct.

69.     This court has the equitable power to, among other things, order the Defendants to disgorge the entire profit they earned from business generated as a result of their violations of state laws governing Medicaid claims and the False Claims Act.

## COUNT V

(Unjust Enrichment)
(All Defendants)

70.     Plaintiff, the United States, repeats and realleges each allegation in ¶¶ 1 through 69, as if fully set forth herein.

71.     This is a claim for the recovery of monies by which all Defendants have been unjustly enriched.

72.     By directly or indirectly obtaining Government funds to which they were not entitled, all Defendants were unjustly enriched. In equity and good conscience, Defendants

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 22**

should not retain those funds and they should be returned to the United States.  Defendants are liable to account and pay such amounts, or the proceeds therefrom, which are to be determined at trial, to the United States.

## COUNT VI

(Common Law Recoupment)
(Defendants HCA, Eastern, Madison, and The Center)

73.     Plaintiff United States repeats and realleges each allegation in ¶¶ 1 through 72, as if fully set forth herein.

74.     This is a claim for common law recoupment, for the recovery of monies unlawfully paid by the United States to Defendants Eastern, Madison, and The Center contrary to statute or regulation.

75.     The United States paid Defendants Eastern (and HCA, under theories previously alleged), Madison and The Center certain sums of money to which they were not entitled; HCA, Eastern, Madison, and The Center are thus liable under the common law of recoupment to account and return such amounts, which are to be determined at trial, to the United States.

### Prayer

WHEREFORE, The United States prays for judgment against the Defendants as follows:

1.     That Defendants cease and desist from violating the FCA, 31 U.S.C. §§ 3729, *et seq.*

2.     That this Court enter judgment against Defendants on Counts I and II under the FCA in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty of a minimum of $5,500 and a maximum of

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 23**

$11,000 for each violation of 31 U.S.C. § 3729, together with all such further relief as may be just and proper.

3.      On Counts Three and Five, for payment by mistake and unjust enrichment that the Court award the United States the damages sustained and/or amounts by which the Defendants were unjustly enriched or by which Defendants retained illegally obtained monies, plus interest, costs, and expenses, and such further relief as may be just and proper.

4.      On Count Four, for disgorgement of illegal profits, that the Court award the United States an accounting of all revenues unlawfully obtained by Defendants, the imposition of a constructive trust upon such revenues, and the disgorgement of the illegal profits obtained by Defendants and such further equitable relief as may be just and proper.

5.      On Count Six, for common law recoupment, that the Court award the United States damages in an undetermined amount, together with costs and interest, and for such further relief as may be just and proper.

6.      That this Court award such other and further relief as seems proper.

**Demand for Jury Trial**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the United States hereby demands a trial by jury.

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 24**

Dated this 6th day of November, 2007.

<div style="margin-left:40%">

THOMAS E. MOSS
United States Attorney


By:     /s/_____
        AMY S. HOWE
        Assistant United States Attorney

</div>

**UNITED STATES' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 25**